## WILLIAM S. GRAY & CO. v. UNITED STATES.

### No. L–199.

Court of Claims.

March 5, 1934.

G. F. Snyder, of Washington, D. C., for plaintiff.

Fred K. Dyar, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

138

Thomas G. Haight, of Jersey City, N. J. (J. Marvin Haynes and Robert H. Montgomery, both of Washington, D. C., and Roswell Magill, of New York City, on the brief), for plaintiff.

James W. Morris, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

This is a suit to recover from the United States: (1) The sum of $5,801.90 on account of overpayment of income and profits taxes for the years 1917 and 1918, together with interest; and (2) the sum of $874.86, due under a contract of settlement with the United States dated January 5, 1921. There is no dispute as to the validity of these claims and the Comptroller General has approved them. Defendant, however, has asserted an offset against them on account of an alleged overpayment made to the plaintiff in the course of a settlement of war contracts which the defendant had with the plaintiff. The sole question in this case revolves around the validity of the counterclaim which the Comptroller General has asserted.

During the World War plaintiff entered into some fourteen contracts and a like number of orders with the government for the manufacture of war materials. It was neces-

sary for the plaintiff to employ subcontractors under these contracts. At the termination of the war these contracts were canceled by the defendant. Each of the contracts contained a provision whereby it was agreed that in the event of termination, prior to its completion, the defendant would protect the plaintiff against its outstanding obligations to an extent apportionable to the unfinished portion of each of its contracts. Among the subcontractors with whom the plaintiff had to deal was the Albany Chemical Company. The plaintiff furnished the raw material to the Albany Chemical Company and the Albany Chemical Company manufactured it into finished products. The Albany Chemical Company, in addition to its contracts with the plaintiff as a subcontractor, also had contracts directly with the government. These contracts were also terminated after the Armistice. The Albany Chemical Company filed its claim with respect to its canceled contracts with the government but made no claim as the subcontractor of plaintiff.

The plaintiff on June 6, 1919, filed its claim with respect to the canceled contracts and thereafter made proof of its obligations incurred under the provisions of the contracts and included in its sworn statement that the Albany Chemical Company was indebted to it for material which had been furnished to it by the plaintiff for the manufacture of finished products under the contracts which the plaintiff had with the defendant. The government made an audit of the plaintiff's statement of its obligations and investigated the relevant books, records, and plants of its subcontractors and determined that there was due from the Albany Chemical Company, the subcontractor of the plaintiff, to the plaintiff under the contracts which the plaintiff had with the government, the sum of $40,421.78. In order to dispose of the contracts involved, in which the Albany Chemical Company was the subcontractor, a supplemental agreement was drawn up by the government whereby it was agreed that the plaintiff should be paid the sum of $40,421.78 in full settlement of its claims against the defendant on account of its canceled contracts. The agreement specifically mentions the contracts involved, and these are the only ones with the Albany Chemical Company as subcontractor. It provides that the plaintiff was to furnish a statement from the Albany Chemical Company that it would look to the plaintiff alone for the settlement of its claims as subcontractor under these contracts. It was further provided that the supplemental contract should not be obliga-

tory upon the defendant until approved by the Air Service Section of the War Department Claims Board, which approval "shall be deemed also as approval of said 'statement', or said 'satisfactory evidence' as sufficiently determining for the Government, for the purpose herein intended, the contractual relations existing between the contractor and the said subcontractor *respecting commitments.*" (Italics inserted.)

In August, 1920, the Albany Chemical Company executed and delivered a statement in which it asserted that it looked alone to the plaintiff for the payment of the sum of $40,421.78, in settlement of its claims against the government, as subcontractor on the contracts with plaintiff, and upon the receipt of this statement from the Albany Chemical Company, the Air Service Section of the War Department Claims Board executed and delivered in September, 1920, the supplemental contract to the plaintiff and paid to the plaintiff the sum called for in the contract, and this amount was duly applied by the plaintiff on its books to the amount which was owed to it by the Albany Chemical Company for the raw materials furnished to it under the canceled contracts.

Among the items for which the government paid the plaintiff, and which entered into the sum agreed upon in full settlement of this particular subcontractor's indebtedness to the plaintiff, was $6,764.04 for 8,308.6 gallons of methyl alcohol. Previous to this settlement with the plaintiff and while these negotiations were going on, the defendant made an audit of the contracts which the Albany Chemical Company had directly with the government on the claims which had been presented by the Albany Chemical Company, and determined that the Albany Chemical Company, under these direct contracts, was entitled to the sum of some $23,000. In the examination of the books, records, and plant of the Albany Chemical Company by the auditor, there was found at this plant the methyl alcohol which had been furnished to it by the plaintiff. Without any claim from the Albany Chemical Company and without notice to the plaintiff, the government auditor included in the claim of the Albany Chemical Company the additional amount of the value of this methyl alcohol and increased the amount due the Albany Chemical Company by the sum of $6,764.04, and payment was duly made to the Albany Chemical Company on June 1, 1920, in the sum of $29,421.29, and the Albany Chemical Company delivered to the government the 8,308.6 gallons of methyl alcohol which had been furnished to it by the plaintiff to be manufactured into finished products under plaintiff's contracts with the government. When the supplemental contract was made with the plaintiff some months after the payment had been made to the Albany Chemical Company, the plaintiff being unaware, and having no knowledge of the Albany Chemical Company's receipt of the payment for this alcohol from the government, applied the voucher given to it by the government to the account of the Albany Chemical Company in full satisfaction of the Albany Chemical Company to it for the material which it had furnished to the Albany Chemical Company, as subcontractor under the government contracts with the plaintiff. The Albany Chemical Company knew when it executed the statement in August that it looked to the plaintiff for the settlement of its account, and that it had been paid by the government through the action of the auditor of the government in including this amount in its claims against the government under its direct contracts. The government knew, or should have known, that this amount had been paid, as the books, records, and plants of the subcontractors of the plaintiff had been examined by the government auditors, but the plaintiff had no way of knowing, and did not know, that the auditor of the government had included the value of the methyl alcohol in the settlement of the government's direct contracts with the Albany Chemical Company, or that payment had been made to its subcontractor. The indebtedness of the Albany Chemical Company to the plaintiff for this methyl alcohol remained open on plaintiff's books and was well known to the auditors of the government who had made the examination of the books and plants of the plaintiff, as well as of its subcontractors.

The discovery of these duplicate payments to the Albany Chemical Company and to the plaintiff was made by the War Department on June 9, 1921. The plaintiff was then notified that it would be held liable for the payment of the methyl alcohol for which the Albany Chemical Company had been paid. The plaintiff sought to collect from the Albany Chemical Company, but payment was refused upon the ground that the government owed the Albany Chemical Company more than this amount and it was a matter between the Albany Chemical Company and the government. In 1923 the Albany Chemical Company was adjudged a bankrupt.

The government seeks now to offset the payment made to the plaintiff against an

amount which is admittedly due to the plaintiff, and the question arises as to the liability of the plaintiff for the value of this methyl alcohol because of the double payments made by the government. The principal contention of the defendant is that its obligation under the cancellation provisions of the contracts was to protect plaintiff against its "outstanding obligations" incurred in connection with the performance of the war contracts, and, since the Albany Chemical Company had been paid for the alcohol in its prior settlement with the government, there was no obligation outstanding for this item at the time of settlement with the plaintiff for which plaintiff required protection, and therefore the payment was improperly made to the plaintiff.

The facts in the case do not support this contention. The alcohol belonged to the plaintiff and was furnished by it to its subcontractor for the purpose of having it manufactured into completed articles as called for in the plaintiff's contracts with the government. It was charged on plaintiff's books against its subcontractor and the subcontractor owed this amount to the plaintiff, and the plaintiff only owed to the subcontractor the price of the finished product less the value of the raw material furnished.

When these contracts were canceled the Albany Chemical Company was indebted to the plaintiff for raw materials furnished it, and the auditor of the War Department established this amount in the sum of $40,421.-78. The payment to the Albany Chemical Company by the government for this alcohol was not in fulfillment of any contract that the government had with the Albany Chemical Company. It was entirely a voluntary payment outside of the contractual relations and in no way protected the plaintiff for the sums due it from its subcontractor.

The record shows no attempt by the government to recover this amount from the Albany Chemical Company. It appears that the government's agents simply assumed that the second payment necessarily was the erroneous one and attempted to collect from the plaintiff which happened to be the last paid. It must be borne in mind that the payment made to the plaintiff was in settlement of canceled contracts, in compliance with the supplemental contract entered into with the government, and there was no fraud, overreaching, or connivance in the execution of this contract. The contract was drawn by the government. The amount to be paid was the amount found by the auditors of the government, and the contract was executed in order to liquidate the amount due to the plaintiff from the Albany Chemical Company as established by an examination of the books, not only of the plaintiff, but the books, records, and plant of the Albany Chemical Company also.

No attempt is made by the defendant to recover the full amount paid on the ground that it was not "an outstanding obligation." The value of this raw material alone is singled out as not being within the terms of the agreement because it was paid twice. If this amount is not an outstanding obligation as covered by the agreement, then the rest of the account due the plaintiff by the subcontractor is in the same class. Both were due from the subcontractor to the contractor and the government in dealing with these accounts classified them as involved in the outstanding liabilities of the contractor. Although, strictly speaking, they were outstanding obligations of the subcontractor to the contractor, nevertheless, the government was obligated to pay for them and it took the straight and short course and made payment to the one who had furnished the material and who ultimately would have to be paid.

The record is singularly clear of all error on the part of the plaintiff. It was unaware that the auditor had included this amount in the claim of the Albany Chemical Company. It had no knowledge that the government had made the payment to the subcontractor, and when it received payment from the government, it applied the amount received to the account for which it was made, and which account had been duly audited by the agents of the defendant and found owing by the government to the plaintiff. The knowledge of this payment to the Albany Chemical Company was in the possession of the government and the Albany Chemical Company, and, even if it had been conveyed to the plaintiff, the liability of the defendant to pay the plaintiff for the material furnished under its contracts would remain.

We can find no *mutual* mistake so far as the plaintiff and the defendant are concerned. If there were a mistake, and it is plain that there was, it is due entirely to the wrongful inclusion of the value of this methyl alcohol by the auditor of the government in the settlement of the direct contracts with the Albany Chemical Company. This company has gone out of existence and the money cannot be collected from it, and the government has paid twice for the same item; but this does not justify the recovery of the amount from the

wrong party, or the innocent party, and the only one from whom collection can be made.

The plaintiff is entitled to recover the sum of $6,676.76, with interest.

It is so ordered.